UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABRAHAM GHORBANIAN, D.D.S.,

Plaintiff,

v.

GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA, *et al.*,

Defendants.

Case No. C14-1396RSM

ORDER DENYING DEFENDANTS'
MOTION FOR SPOLIATION SANCTIONS

## I. INTRODUCTION

This matter comes before the Court on Defendants' Motion for Spoliation Sanctions. Dkt. #81. Defendants seek an Order dismissing this case with prejudice on the basis that Plaintiff intentionally destroyed or failed to preserve documents related to his occupational and professional duties during the time periods relevant to this case. *Id.* Defendants assert that they have been prejudiced because the documents they believe once existed but have since been destroyed are necessary to rebut Plaintiff's testimony as to the essential functions of his job in 2011 and 2012 after his shoulder surgery. Dkt. #96 at 6. Plaintiff responds that there is no evidence he ever destroyed any documents in this matter, that he has not lied to the Court in previous briefing about the existence of any evidence, and there is no actual prejudice to the Defendants as they allege. Dkt. #94. Plaintiff further argues that to the extent any documents were destroyed prior to 2011, when the potential for litigation first arose, he had no duty to

ORDER
PAGE - 1

preserve any such documents, and therefore he cannot be sanctioned for any alleged conduct occurring prior to that date. Dkt. #94 at 19-21. For the reasons set forth herein, the Court DENIES Defendants' motion.

## II. BACKGROUND

Plaintiff began practicing dentistry in Washington State in 1998, and remained involved in that occupation until 2012, when he moved to California. Dkt. #15 at 2. Shortly after beginning his practice in Washington, Defendants issued two disability policies (the "Policies") to Plaintiff, which are at issue in this case. The initial Guardian policy was issued on February 23, 2001, with two Physical Impairment Riders, containing certain exclusions from coverage. Dkt. #32 at 2. The first rider excluded "losses resulting from impairment of the cervical spine or cervical nerve roots," and the second rider excluded "losses resulting from disorders of the right shoulder." However, the policy permitted Plaintiff to apply for the cancellation of both riders if he received no health care services for the conditions specified in them for five years after issuance, and if a physician selected by Guardian agreed in writing that a full medical recovery had occurred. *Id.* The five-year waiting period was reduced to one year following the merger of Guardian and Berkshire in July 2001. *Id.* at 3.

Accordingly, on or around February 11, 2002, Plaintiff requested the removal of the exclusions and stated in his application that he had "not been treated or seen by any physician, acupuncturist, naturopath, or physician for any condition related to neck back or spine, shoulder." *Id.* at 2-3. Defendants granted Plaintiff's request on March 11, 2002, and removed the riders/exclusions. *Id.* at 3. Plaintiff subsequently applied for a second disability policy from Berkshire. *Id.* at 4. The Berkshire policy, mirroring the Guardian policy, did not contain the riders/exclusions. *Id.*

Plaintiff alleges in this lawsuit that he was involved in an automobile accident in Washington in June 2002. Dkts. #1, Ex. A at A-5, ¶ 11 and #100 at ¶ 11. Afterward, Plaintiff was treated in Bellevue, Burien, and Issaquah, Washington. Dkt. #15 at 2. Plaintiff was allegedly involved in a second automobile accident in June 2005. Dkts. #1, Ex. A at A-5, ¶ 12 and #100 at ¶ 12. Subsequently, Plaintiff had surgery in Seattle, followed by physical therapy in Redmond, Washington. Dkt. #15 at 2. In 2011, Plaintiff submitted a disability claim based on the injuries he sustained from his auto accidents. Dkts. #1, Ex. A at A-5, ¶ 13 and #100 at ¶ 13.

On or around April 14, 2012, Defendants denied Plaintiff's claim on the basis that "he was not considered totally disabled from his pre disability occupational duties" because his "pre disability occupation was an executive and owner of dental practices rather than a practicing dentist." Dkt. #1, Ex. A at A-6, ¶ 16. The instant law suit followed, alleging a variety of claims, including breach of duty of good faith and fair dealing and breach of contract. Dkts. #1, Ex. A and #100.

### III. DISCUSSION

**A. Legal Standard**

This Court has a wide range of inherent powers to govern litigation processes. *Chambers v. Nasco*, 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). One of these is the discretionary power to levy appropriate sanctions against a party who prejudices its opponent through the spoliation of evidence that the spoliating party had reason to know was relevant to litigation. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).

Spoliation is defined as the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation" once

the duty to do so has been triggered. *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (internal quotation and citation omitted). A party seeking sanctions for spoliation first bears the burden of establishing that the opposing party destroyed relevant evidence. *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015). To determine whether spoliation occurred, the majority of courts use some variation of a three-part test: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind;' and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012) (citing cases).

If spoliation is found, then courts generally consider three factors to determine whether and what type of sanctions to issue: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d at 992; *see also Leon v. IDX Sys. Corp.*, 2004 U.S. Dist. LEXIS 31361, 2004 WL 5571412, at *3 (W.D.Wash. 2004) *aff'd.*, 464 F.3d 951 (9th Cir. 2006).

**B. Alleged Spoliation of ESI**

There is no dispute between the parties the Plaintiff had an obligation to preserve evidence beginning in December of 2011, when his then-attorney threatened litigation. Dkts. #81 at 16 and #94 at 3. However, the parties disagree as to whether any evidence has actually been destroyed, and, if it has been destroyed, when that destruction occurred and by whom. Thus, the Court must first address those questions.

ORDER
PAGE - 4

Defendants allege that Plaintiff has destroyed or failed to preserve emails prior to 2009, and during the 2011-2012 timeframe. In support of this allegation, they focus first on the number of emails that have been produced in discovery. According to Defendants, "[t]he number of emails produced prior to 2013 is tellingly low in comparison to those after 2013 – the combined total for the four years prior to 2013 is less than 10% of the combined total for 2013-2016." Dkt. #81 at 17. Defendants present the following comparison of the number of emails dated by year they assert they received in discovery:

    2009: 3,378

    2010: 7,573

    2011: 1,521

    2012: 252

    2013: 29,705

    2014: 39,192

    2015: 43,168

    2016: 20,114

Dkt. #83 at ¶ 5.[1] To put those numbers in context, Defendants highlight an email sent by Plaintiff, on July 24, 2009, mandating:

> EVERY SUNRISE EMPLOYEE WILL HAVE A SUNRISE EMAIL ACCOUNT AND THEY WILL CHECK THEIR EMAILS 3 TIMES A DAY. NO IFS AND BUTS ABOUT IT; WE WILL ENFORCE THIS SIMPLE REQUEST AND THOSE NOT COMPLYING WILL BE REPRIMANDED.

Dkt. #82-11, Ex. 217 (emphasis in original). Defendants assert that this email suggests the number of emails produced for the time period prior to 2013 should be much higher.

---

[1] Defendants explain that once the emails were produced, they were able to organize them by "parent date," and when organized in that manner, they were able to see that no emails prior to March 21, 2009, had been produced. Dkt. #83 at ¶ ¶ 3-4.

ORDER
PAGE - 5

The Court is not persuaded by this record that documents have actually been destroyed. The fact that there are fewer numbers of emails in some years than in others, does not in and of itself suggest to the Court that emails were intentionally destroyed. Moreover, Plaintiff explains that between 2009 and 2012, his email was contained on a server hosted by Go Daddy. *See* Dkt. #94-2 at ¶ 4. In late 2012 or early 2013 a dedicated server was established for Sunrise Dental and all emails in existence at the time were transferred from the Go Daddy Server to the new server. Dkt. #94-2 at ¶ 6. The person hired to perform this work has testified that he copied all emails in the various Go Daddy accounts, copied everything to the new server, and did not delete any emails. *Id.* at ¶ ¶ 7-8. Plaintiff also asserts that he has never intentionally deleted an email or instructed anyone else to delete emails. Dkt. #94-4 at ¶ 8. He also states that he has retrieved all email which is accessible, and admits that he did not produce emails from the email account to which he no longer has access. *Id.*

Defendants also assert that Plaintiff took no steps to preserve any documents after receipt of a litigation hold letter in 2012. For example, they point to testimony of Plaintiff's prior counsel, wherein he states that he provided the litigation hold letter to Plaintiff, but did not take steps to collect any documents identified in the letter at that time or send any correspondence to others at Sunrise Dental about their obligations to preserve such documents. Dkt. # 93-1 at 25:3-27:4. Defendants characterize this testimony as evidence that Plaintiff did not preserve evidence. However, that is not the way the Court interprets that evidence. Rather, the testimony simply states what an attorney did or did not do with respect to a litigation hold letter he received from Defendants, and any efforts he made to collect documents at that time. Importantly, litigation had not yet begun, there were no pending discovery requests, and, while

Plaintiff had an obligation to preserve documents, there was no obligation to actually collect and produce documents simply on the basis of receiving a litigation hold letter.

Significantly, Defendants produce no direct evidence that any documents were actually destroyed. In fact, rather than seeking an Order from this Court to collect such evidence of destruction, they ask the Court to speculate that records have been destroyed and impose the ultimate sanction – dismissal of this case.[2] As one District Court has noted, "[i]n the absence of a strong showing that the responding party has somehow defaulted in [its] obligation [to preserve evidence], the court should not resort to extreme, expensive, or extraordinary means to guarantee compliance." *Powers v. Thomas M. Cooley Law Sch.*, Case No. 5:05-CV-117, 2006 U.S. Dist. LEXIS 67706, 2006 WL 2711512, at *5 (W.D. Mich. Sept. 21, 2006).

For these reasons, the Court finds that Defendants have not met their initial burden of demonstrating to the Court that any documents have been destroyed. While Defendants attempt to shift the burden to Plaintiff to demonstrate that documents have not been destroyed, that is not his burden on this motion, and in any event he has sufficiently rebutted allegations of document destruction at this time. *Ryan,* 786 F.3d at 766. Accordingly, the Court will not address the remaining elements of spoliation or whether sanctions are warranted.

---

[2] It is interesting that Defendants produce no evidence from Go Daddy about its policies and practices between 2009 and 2012, how much storage memory it had for the accounts in question, whether it backs up and maintains back up tapes of its accounts, and whether it utilized auto deleting software in those years. Further, despite Defendants' strong assertions of malfeasance in this case, they have not sought any Order from this Court for a forensic examination of the servers in question or of Plaintiff's individual computers, which would certainly yield evidence of document destruction if such action had occurred. *See Brocade Commc'n Sys., Inc. v. A10 Networks, Inc*., Case No. 10-cv-3482, 2012 U.S. Dist. LEXIS 2846, 2010 WL 70428, at *3 (N.D. Cal. Jan 9. 2012) (forensic inspection may be warranted when "serious questions exist both as to the reliability and the completeness of materials produced").

ORDER
PAGE - 7

## IV. CONCLUSION

Having reviewed Defendants' Motion for Spoliation Sanctions, the Response in opposition thereto and Reply in support thereof, along with the supporting Declarations and exhibits and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Motion for Spoliation Sanctions (Dkt. #81) is DENIED.

DATED this 28th day of April 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE